IMPERIAL CASUALTY AND INDEMNITY COMPANY
*v.* STATE OF CONNECTICUT ET AL.
(SC 15737)

Berdon, Norcott, Katz, McDonald and Peters, Js.

Argued April 22—officially released August 11, 1998

*Gregory T. D'Auria,* assistant attorney general, with whom were *Carolyn K. Querijero,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellants (defendants).

*Mark R. Kravitz,* with whom were *John F. Conway* and, on the brief, *Bonnie L. Patten,* for the appellee (plaintiff).

*Opinion*

BERDON, J. This appeal arises out of a declaratory judgment action filed by the plaintiff, Imperial Casualty and Indemnity Company, with respect to a controversy between it and the defendants, the state of Connecticut and various individual employees of the state police department, regarding insurance coverage to be provided by the plaintiff under two policies that it issued to the defendants. The plaintiff sought a declaration as to whether it was obligated, under the terms of each of the two policies, to provide a defense for the defendants in ten underlying federal court actions that had been instituted against the defendants by various third parties.[1] The trial court rendered summary judgment in

---

[1] The ten underlying federal court actions were consolidated by the United States District Court on June 7, 1990. See *In re State Police Litigation,* 888 F. Sup. 1235 (D. Conn. 1995). The individual complaints in those actions allege that employees of the Connecticut state police department, while in the employ of that department, deprived the plaintiffs in the underlying actions of rights secured to them by the constitutions and laws of the United

favor of the plaintiff with respect to nine of the eleven counts of the plaintiff's complaint that related to only one of the two policies—the policy that provided coverage for the period extending from July 30, 1986, through July 30, 1989 (1986–89 policy)—finding that the plaintiff was not obligated to provide the defendants with a defense under the terms of that policy. Subsequently, after a trial, the court determined that the plaintiff did have a duty to provide the defendants with a defense under the terms of the other policy, which provided coverage for the period extending from July 30, 1984, through July 30, 1986 (1984–86 policy). Both the plaintiff and the defendants appealed from the judgment of the trial court to the Appellate Court.[2] We transferred the appeals to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). On April 8, 1998, the plaintiff withdrew its appeal and only the defendants' appeal remains. We reverse in part the judgment of the trial court.

States and the state of Connecticut by illegally intercepting, recording, disclosing and otherwise using, without the knowledge or consent of the plaintiffs, all telephone calls made to, from, and within state police barracks by the plaintiffs and others, in violation of federal law and subsequently fraudulently concealing such wrongdoing. See *In re State Police Litigation*, 88 F.3d 111 (2d Cir. 1996); *In re State Police Litigation*, supra, 888 F. Sup. 1235.

[2] The plaintiff had appealed an aspect of the trial court judgment that is unrelated to the issues in this appeal. The issue appealed by the plaintiff was whether the trial court correctly had determined that the plaintiff was responsible for the entire cost of the defendants' defense in the action brought by the Connecticut Criminal Defense Lawyers Association that was the subject of count one of the plaintiff's complaint. In that action, the plaintiff alleged that the defendants had engaged in illegal wiretapping over a twelve year period, however, the 1984–86 policy provided the defendants with insurance coverage for conduct occurring during only two of those twelve years. The plaintiff sought apportionment of the costs of the defendants' defense between it and the defendants, claiming that it would be unfair to require it to pay for the entire defense under the circumstances. The trial court determined that the plaintiff was obligated to assume the entire cost of the defendants' defense without the benefit of apportionment between it and the defendants. From that aspect of the trial court's decision, the plaintiff appealed. Thereafter, the plaintiff withdrew its appeal.

The following facts are not in dispute. On July 30, 1984, the plaintiff issued to the state the 1984–86 policy, which was entitled "Law Enforcement Professional Liability Insurance Policy." On July 30, 1986, it issued to the state a second policy, the 1986–89 policy, which bore the same title as the earlier policy and, after twice being renewed, provided coverage through July 30, 1989. In 1989 and 1990, ten lawsuits seeking damages and injunctive relief were filed in the United States District Court for the District of Connecticut against various state police officers, alleging that the officers had engaged in illegal wiretapping during the 1984–86 and 1986–89 policy periods. Specifically, each of the federal complaints alleged that members of the Connecticut state police department had engaged in violations of federal penal statutes, including the antiwiretapping provisions of the Omnibus Crime Control Act of 1968, 18 U.S.C. §§ 2510 through 2521.

After the pleadings were closed in the declaratory judgment action, the plaintiff moved for summary judgment on all eleven counts of its complaint, claiming that it was not obligated to provide the defendants with a defense in the underlying federal actions because the complaints alleged intentional acts that were not within the coverage of either the 1984–86 or the 1986–89 policy. The trial court agreed with the plaintiff with respect to the 1986–89 policy, but determined that the complaints did state claims that were within the coverage provided by the 1984–86 policy. Consequently, the trial court rendered summary judgment on counts three through eleven of the plaintiff's complaint, which pertained to conduct that occurred during the 1986–89 policy period.[3]

[3] Counts three through ten of the complaint pertained to damages resulting from acts committed by the defendants during the 1986–89 policy period. Count eleven alleged that, in the event that the court should find that the plaintiff was obligated to provide the defendants with a defense in the underlying actions under the terms of the 1986–89 policy, a deductible would

In this appeal, the defendants claim that summary judgment improperly was rendered because the 1986–89 policy expressly provides coverage for intentional acts that result in covered injuries, such as the acts alleged in the underlying federal complaints. Alternately, the defendants claim that even if the express provisions of the 1986–89 policy can be considered ambiguous with regard to whether injuries resulting from intentional acts are covered, any ambiguity in the policy language must be resolved in favor of coverage. As a result of their interpretation of the policy and the broad nature of an insurer's duty to defend, the defendants argue that the plaintiff is obligated to provide them with a defense in the underlying federal actions. The plaintiff argues, conversely, that the 1986–89 policy language expressly excludes from the scope of its coverage intentional acts such as those alleged in the underlying federal complaints. Therefore, the plaintiff argues, it is under no duty to provide a defense for the defendants with respect to intentional conduct alleged to have occurred during the 1986–89 policy period. We conclude that the language of the 1986–89 policy must be interpreted to include coverage for damages arising from intentional acts when the result is a covered injury. Consequently, the plaintiff is obligated to provide the defendants with a defense to the allegations contained in counts three through ten of the underlying federal complaints.

I

As a preliminary matter, we note that the plaintiff objects to the defendants' claim on appeal that the 1986–89 policy provides coverage for intentional acts because, the plaintiff argues, the defendants conceded in the trial court proceedings that the policy does not

be applicable to each incident of misconduct. Whether a deductible applies is an issue that is not before us in this appeal.

cover intentional acts and, therefore, they should not be allowed to raise this claim on appeal. In their opposition to the plaintiff's motion for summary judgment before the trial court, the defendants did not argue specifically that the contract covered all types of intentional acts. Instead, they argued that the plaintiff was obligated to provide them with a defense in the underlying actions because: (1) the defendants might be found liable on the basis of negligence and the policy covers negligent acts; (2) the defendants might be found to have had a good faith basis for their conduct and not to have intended to injure anyone, such that their conduct might not constitute a wilful violation of a penal statute so as to be excluded from the policy's coverage; and (3) the term "occurrence" as used in the policy need not be defined by the court at the summary judgment stage but should be defined only after further fact-finding occurs. Presumably, because the defendants did not contend specifically that the policy provided coverage for intentional conduct, the trial court stated in its memorandum of decision that the defendants had conceded that such coverage did not exist.[4]

On appeal, the theories advanced by the defendants as a basis for their argument that the plaintiff is obligated to provide them with a defense under the 1986–89 policy are, in some respects, different from the theories relied on at trial. The defendants argue on appeal that the duty to defend exists because the allegations in

---

[4] In its memorandum of decision on the plaintiff's motion for summary judgment, the trial court articulated the parties' arguments as follows: "[The plaintiff] argues that it has no duty to defend the defendants in the underlying lawsuits because the allegations in the underlying complaints do not come within the coverage of either insurance policy. [The] [d]efendants claim that 'the *potential* for liability, and not the language of the complaint, is what gives rise to a duty to defend' *and conceding that intentional behavior is not covered, [the] defendants maintain* that since the federal court may make a finding of negligent behavior, which is covered by the policy, a duty to defend exists." (Emphasis added.)

the underlying complaints potentially state claims for covered injuries as follows: (1) the defendants may be found liable in federal court on the basis of conduct other than intentional conduct, i.e., on the basis of negligent conduct; (2) even if the policy was construed not to cover intentional acts, the policy does not define what constitutes an intentional act and should not be interpreted as excluding coverage for all intentional acts, but only those committed with an intent to cause injury; and (3) the policy definitions of "occurrence" and "personal injury" are internally inconsistent and must be interpreted against the insurer to provide coverage for intentional acts. The plaintiff's objection relates primarily to the third theory of liability.

The plaintiff is correct in its assertion that, ordinarily, "we . . . review a case on the theory upon which it was tried and decided in the trial court"; *Lashgari* v. *Lashgari*, 197 Conn. 189, 196, 496 A.2d 491 (1985); and do not address on appeal issues that have not been raised in the trial court. *Grody* v. *Tulin*, 170 Conn. 443, 447–48, 365 A.2d 1076 (1976). This practice is in accord with Practice Book § 60-5,[5] which provides in part that

---

[5] Practice Book § 60-5 provides: "Review by the Court; Plain Error; Preservation of Claims

"The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same.

this court is not bound to consider a claim "unless [the claim] was distinctly raised at the trial or arose subsequent to the trial." The application of § 60-5 is discretionary, however, and in exceptional circumstances, even claims not properly raised below will be considered. Generally, "[s]uch exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial." (Internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 828–29, 614 A.2d 414 (1992). In addition, in some instances we may overlook the procedural error and consider a question not properly raised below, "not by reason of the appellant's right to have [the claim] determined but because, in our opinion, in the interest of the public welfare or of justice between the parties," the question ought to be considered. *Kavanewsky* v. *Zoning Board of Appeals*, 160 Conn. 397, 401, 279 A.2d 567 (1971).

An example of a case in which we chose to overlook a party's failure altogether to raise an important claim is *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 628 A.2d 946 (1993). In *Genovese*, the plaintiff failed to advance his claim under General Statutes § 31-51bb both in the trial court and initially before this court. We, on our own initiative and in the interests of achieving justice, raised the applicability of that section and ordered the parties to submit supplemental briefs on the issue, ultimately deciding the case on that basis. Id., 479–80 and n.6; see also *G. & H. Investment Co.* v. *Raymond*, 113 Conn. 778, 779, 155 A. 497 (1931)

"If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10."

(abundant reason to consider claim not raised in proceedings below or in pleadings where by oversight judgment has entered that is contrary to plain language of written instruments that lay at basis of case); *Schmidt* v. *Manchester*, 92 Conn. 551, 555, 103 A. 654 (1918) (where applicable statute not brought to attention of court, statute could be raised on appeal because errors arising from absence of actual knowledge always subject to review); *Cunningham* v. *Cunningham*, 72 Conn. 157, 160, 44 A. 41 (1899) (same); *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 522, 705 A.2d 215 (1998) (" 'Connecticut courts have concluded that the misapplication of a statute' " may be raised on appeal for first time).

In this case, it is appropriate, in the interest of doing justice between the parties in accordance with the provisions of their written agreement, that we consider the defendants' theory that the contract provided coverage for intentional torts, despite the fact that the defendants did not make this argument below. First, the interpretation of insurance contracts is a matter of law to be decided by the court and is, therefore, subject to de novo review on appeal.[6] *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 642, 679 A.2d 929 (1996). Consequently, in interpreting the policy provisions to determine the coverage provided, we are already obliged to examine the contract at length in order to perform a full and thorough review of the trial court's decision on the contested issue of coverage. In addition, the

---

[6] "Although there have been cases in which the interpretation of an insurance contract has rested on factual questions; see, e.g., *Libero* v. *Lumbermens Mutual Casualty Co.*, 141 Conn. 574, 580, 108 A.2d 533 (1954); this is not such a case." *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 643, 679 A.2d 929 (1996). In this case, as in *Flint*, the "only questions raised . . . are whether the allegations set forth in [the] complaint triggered [the insurer's] obligation to defend . . . [the] insured in the underlying action, and whether the [policy] exclusion is ambiguous. These issues present questions of law, which we review de novo." Id.

defendants' argument does not raise an entirely new issue, but pertains to the very issue that was decided by the trial court and is the subject of this appeal. Furthermore, the record is complete with respect to this argument, and both parties have fully briefed it in their submissions to this court. See *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 144, 709 A.2d 1075 (1998) ("[e]ven if we were inclined to overlook the inconsistency between [the plaintiffs'] arguments to the trial court and to this court . . . we could not consider their argument on its merits because we lack the record to do so"); *Genovese* v. *Gallo Wine Merchants*, supra, 226 Conn. 479–80 (where court raised issue of applicability of statute never raised in trial court and parties had not briefed issue, court ordered parties to submit supplemental briefs); *Scott* v. *General Iron & Welding Co.*, 171 Conn. 132, 139, 368 A.2d 111 (1976) (where plaintiff argued on appeal that burden of proof improperly placed on him but did not assign issue of burden of proof as error below, court considered claim on appeal because both parties briefed issue). Under these circumstances, our consideration of the argument will not result in unfairness or unusual hardship for the plaintiff. Therefore, we will address the defendants' argument.

## II

We now turn to the merits of the defendants' claim that the plaintiff is obligated to provide them with a defense in the underlying proceedings based on the terms of the 1986–89 policy. Whether the plaintiff had a duty to defend under the policy depends on whether, in light of the policy language, the complaints in the underlying federal actions alleged conduct for which coverage was provided. "[A]n insurer's duty to defend . . . is determined by reference to the allegations contained in the [injured party's] complaint." *Flint* v. *Universal Machine Co.*, supra, 238 Conn. 646. The "duty

to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage." (Internal quotation marks omitted.) *Hogle* v. *Hogle*, 167 Conn. 572, 576, 356 A.2d 172 (1975). Because "[t]he duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured"; *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21 (1967); "[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." (Emphasis in original; internal quotation marks omitted.) *West Haven* v. *Commercial Union Ins. Co.*, 894 F.2d 540, 544 (2d Cir. 1990), quoting *West Haven* v. *Liberty Mutual Ins. Co.*, 639 F. Sup. 1012, 1017 (D. Conn. 1986).

In this case, the parties agree that the allegations contained in the complaints in the underlying federal actions allege intentional conduct on the part of the defendants. The parties disagree, however, as to whether the 1986–89 policy provides coverage for intentional conduct. Therefore, we must examine the policy to determine whether coverage was provided for injuries resulting from intentional acts.

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 702, 569 A.2d 1131 (1990). "The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." (Internal quotation marks omitted.) *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996). "It is axiomatic that a contract of insurance must be viewed

in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." *Flint* v. *Universal Machine Co.*, supra, 238 Conn. 643. "The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Citations omitted; internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 542–43, 687 A.2d 1262 (1996). "[T]his rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995). "Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law . . . which this court reviews de novo." (Internal quotation marks omitted.) *Flint* v. *Universal Machine Co.*, supra, 642.

The language in § I (1) of the 1986–89 policy that is the subject of the dispute provides as follows: "[The plaintiff] will pay those sums that [the defendants] become legally obligated to pay as civil damages because of wrongful acts arising out of Law Enforcement activities to which this insurance applies. . . . The insurance only applies to damages caused by wrongful acts arising out of law enforcement activities caused by an 'occurrence.' . . ." Section V (4) of the policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions which result in 'bodily injury,' 'personal injury' or 'property damage.' " If this were the only relevant language contained in the policy, it would be clear that the policy does not provide coverage for intentional conduct. The policy, however, contains other pertinent language in

§ V (5) that further explains the coverage provided as follows: " 'Personal injury' means damages arising out of, but not limited to: false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, discrimination, mental anguish, wrongful entry or eviction, violation of property or deprivation of any rights, privileges or immunities secured by the Constitution and Laws of the United States of America or the State for which the insured may be held liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress. However, no act will be deemed to be or result in personal injury unless committed in the regular course of duty by the insured."

The defendants claim that this latter language defining "personal injury" expressly indicates that coverage is provided for damages resulting from intentional acts such as the acts alleged in the underlying federal lawsuits. Specifically, the defendants rely on the fact that § V (4) of the policy provides coverage for "continuous or repeated exposure to conditions which result in . . . 'personal injury' " such as the "deprivation of any rights, privileges or immunities secured by the Constitution and Laws of the United States of America or the State for which the insured may be held liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress" as enumerated in § V (5) of the policy—the types of injuries at issue in this case. The plaintiff argues, however, that by focusing on the sorts of injuries that may be covered, the defendants overlook the fact that the policy defines an occurrence as an *accident,* and the conduct involved in this case was not accidental, but intentional. The defendants respond that in light of the definition of personal injury set forth in the policy, which appears to include intentional as well as accidental conduct, the word "accident" cannot be interpreted literally but, instead, must

be interpreted by considering the policy as a whole, and the definition of personal injury in particular. We agree with the defendants.

Although by defining an occurrence as "an accident" the policy attempts to limit coverage to conduct that is unintentional, this definition, when read in conjunction with the definition of personal injury, gives rise to an internal inconsistency. Specifically, the definition of personal injury indicates that certain injuries may be covered that could have resulted only from intentional conduct, such as false arrest, false imprisonment, malicious prosecution and actions brought under 42 U.S.C. § 1983, as well as many injuries that generally involve intentional conduct, such as assault and battery, libel, slander, defamation, discrimination and the violation of other rights, privileges and immunities secured by the constitution and laws of the United States or the state. The definition of occurrence as "an accident," however, appears to encompass only unintentional conduct. The result is that the policy purports to provide coverage for accidental, intentional torts—torts that, of course, do not exist. In light of this inconsistency, it is impossible to determine solely on the basis of the policy's express language whether the conduct at issue in this case is covered.

In determining what coverage is provided, however, the policy language is not be read in a vacuum. *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 168, 622 A.2d 545 (1993). Rather, the interpretation of the policy language is to be informed by what the parties likely intended in entering the contract. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284,

294–95, 685 A.2d 305 (1996). In this case, the policy is entitled "Law Enforcement Professional Liability Insurance Policy." The title indicates that the parties contracted for the purpose of providing coverage for claims associated with the work-related activities of the state's law enforcement personnel. The defendants contend, and the plaintiff does not dispute, that law enforcement personnel are often subject to claims that by definition involve intentional conduct, such as false arrest, malicious prosecution and actions instituted pursuant to 42 U.S.C. § 1983. It appears unlikely, therefore, that the defendants in this case would have intended to purchase insurance that did not provide coverage for such claims. The plaintiff insists, however, that its intention was to provide coverage only for those injuries that could be inflicted unintentionally.

If we were to interpret the policy as the plaintiff suggests, the only damages relating to personal injuries that would be covered under the policy would be negligent forms of assault and battery, libel, slander, defamation, discrimination, mental anguish, wrongful entry or eviction, violation of property, and rights, privileges or immunities violations, and the erroneous service of civil papers. On the other hand, damages arising from false arrest, false imprisonment, malicious prosecution, and from intentional forms of assault and battery, libel, slander, defamation, discrimination, mental anguish, wrongful entry or eviction, violation of property, and rights, privileges or immunities violations, including § 1983 actions, would all be excluded from the scope of the policy's coverage. Indeed, coverage for damages resulting from several intentional causes of action— such as false arrest, false imprisonment, malicious prosecution, and § 1983 claims—would be excluded even though the policy purports to provide coverage for personal injuries resulting from those causes of action. The latter result hardly seems rational, and we have

difficulty imagining that the defendants could have intended to purchase a policy of insurance that excluded such coverage. Our consideration of the parties' intent in entering the contract, therefore, provides a compelling reason to interpret the inconsistent policy language as including coverage for intentional acts.

A further reason to interpret the inconsistent policy language as encompassing intentional conduct is the general rule that ambiguous provisions in a contract are to be interpreted against the drafter. This rule applies to contracts of insurance; *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 542–43; as long as there is ambiguity inherent in the policy that "emanate[s] from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 295. Because we have already determined, in this case, that it is the language of the policy itself that gives rise to an ambiguity, application of the rule is appropriate and serves to further support our conclusion that the policy must be interpreted to include coverage for intentional acts that result in personal injuries during the policy period.[7]

---

[7] The plaintiff argues that in this case application of the rule that ambiguous provisions of a contract are interpreted against the drafter would be inappropriate because the defendants' were sophisticated purchasers and the rule was intended to benefit unsophisticated consumers. We disagree.

The plaintiff has cited only one unreported Connecticut case that suggests that there may be situations where application of the rule that ambiguity in a policy is to be interpreted against the drafter might be inappropriate. In that case, *Linemaster Switch Corp.* v. *Aetna Life & Casualty Corp.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV9103964325 (July 31, 1995) (15 Conn. L. Reptr. 223), the trial court was asked to interpret an insurance policy to determine if a duty to defend existed with respect to actions brought against the insured by the United States Environmental Protection Agency and the Connecticut department of environmental protection under a new federal statute that created strict retroactive liability for past hazardous waste disposal activities. The court noted that, because the risk for which coverage had been claimed was not

Finally, our conclusion that the internal inconsistency in the policy language must be interpreted to include coverage for intentional acts that result in personal injuries is in accord with the results reached in other jurisdictions that have interpreted similar policy language. In *North Bank* v. *Cincinnati Ins. Co.*, 125 F.3d 983, 987 (6th Cir. 1997), the court considered policy language that provided coverage for "occurrences," which the policy defined as events that " 'unexpectedly or unintentionally resulted in personal injury,' " where personal injury was defined to include a number of inherently intentional torts such as false arrest, false imprisonment, malicious prosecution, libel, slander and defamation. The court concluded that the policy language was inconsistent and created an ambiguity. Id. The court explained that "[i]n selling the policies, the insurance company uses these conflicting provisions to 'create the impression that the policy provides coverage for . . . intentional [torts],' but when an insured attempts to claim coverage the insurance company argues that the [intentional tort] is not actually covered by the policy." Id. Consequently, the court concluded that the ambiguity in the policy had to be resolved in favor of the insured, to include coverage for intentional discrimination. Id.; see also *Hurst-Rosche Engineers, Inc.* v. *Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995); *Lineberry* v. *State Farm Fire & Casualty Co.*, 885 F. Sup. 1095, 1098 (M.D. Tenn. 1995); *Lincoln National Health & Casualty Ins. Co.* v. *Brown,*

---

a risk that had been anticipated or even contemplated at the time when the policy was issued, and because both parties were sophisticated and of fairly equal bargaining power, the court might not automatically apply the rule that ambiguity in the policy must be interpreted against the insurer. Id., 226. The present case is easily distinguishable from *Linemaster Switch Corp.*, in that the peculiar circumstances on which the trial court based its reasoning in that case do not exist here. Rather, the policy in this case contains specific references to intentional torts. Therefore, we find no reason to deviate from the general rule that ambiguity in an insurance policy is to be interpreted against the drafter.

782 F. Sup. 110, 113 (M.D. Ga. 1992); *Davidson* v. *Cincinnati Ins. Co.*, 572 N.E.2d 502, 508 (Ind. App. 1991); *Missouri Property & Casualty Ins. Guaranty Assn.* v. *Petrolite Corp.*, 918 S.W.2d 869, 872 (Mo. App. 1996).

We conclude, therefore, that the 1986–89 policy in this case does not exclude coverage for intentional conduct as alleged in the underlying federal proceedings and that, as a result, the plaintiff is not relieved of the duty to provide the defendants with a defense in those proceedings on that basis.

### III

The plaintiff also claims that it does not have a duty to provide the defendants with a defense because, it argues, the underlying federal complaints allege the wilful violation of a penal statute, and the policy contains an exclusion with respect to such conduct. The policy provides in § I (2) as follows: "Exclusions. This insurance does not apply to . . . (*l*) [a]ny claim arising out of the willful violation of a penal statute or ordinance. . . ." The defendants argue that, because the complaints allege other causes of action in addition to the wilful violation of 18 U.S.C. § 2511 (1), a federal antiwiretapping statute that has both a civil and a penal component, the plaintiff is not relieved of its duty to defend. We agree with the defendants.

The complaints in the underlying federal actions allege statutory and common-law civil violations and constitutional violations as a result of conduct that allegedly also violated the penal component of the federal antiwiretapping statute. None of the defendants has been charged with violating the penal component of that statute, however, or with violating any other penal statute. Furthermore, it is entirely conceivable that, in the underlying proceedings, the defendants will be found liable in tort or on the basis of constitutional violations despite the fact that they may never be

charged with or found guilty of violating the penal component of the federal antiwiretapping statute. This is not a situation, therefore, where, if the defendants are not found guilty of violating the penal component of the federal statute, they cannot be found liable for any of the other damages allegedly incurred. Consequently, the claims cannot be characterized as arising out of "the willful violation of a penal statute" so as to be excluded from coverage under § I (2) (*l*) of the policy. "The fact that the complaint alleges a claim that is excluded by the policy does not excuse [the] insurer from defending [the] insured where other counts of the claim fall within the provisions of the policy." 7C J. Appleman, Insurance Law and Practice (1979) § 4684, pp. 78–79. As a result, the plaintiff remains obligated to provide a defense.[8]

Because the complaints in the underlying federal actions allege facts that bring the claims within the coverage of the 1986–89 policy, we conclude that the plaintiff is obligated to provide the defendants with a

---

[8] The plaintiff also contends that it does not have a duty to defend because the underlying federal complaints contain claims for injunctive relief and class action relief, and the policy contains an exclusion for any action, claim or "suit" seeking injunctive relief or class action relief. Again, the fact that a demand for class action or injunctive relief is made in an action does not automatically relieve an insurer of its duty to defend. In determining the duty to defend, "courts do not examine only the pleaded word but the potential liability created by the suit. . . . To restrict the defense obligation of the insurer to the precise language of the pleading . . . would create an anomaly for the insured . . . [because] the complainant in the third party action drafts his complaint in the broadest terms . . . . In light of the likely overstatement of the complaint and of the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage." (Citations omitted.) *Gray* v. *Zurich Ins. Co.*, 65 Cal. 2d 263, 276, 419 P.2d 168 (1966). In addition to claims seeking injunctive and class action relief, the actions in this case also contain demands for monetary damages, and the plaintiffs in the underlying federal actions may prevail on their claims for monetary or other relief. Therefore, the broad duty to defend is not overcome by the fact that the complaints include claims for class action or injunctive relief.

defense in the underlying federal actions that relate to the 1986–89 policy period.

The judgment of the trial court is reversed in part and the case is remanded to that court for further proceedings.

In this opinion NORCOTT, KATZ and MCDONALD, Js., concurred.

PETERS, J., dissenting. I respectfully disagree with the majority opinion on procedural as well as substantive grounds. Accordingly, I dissent.

The central issue in this case is whether the 1986–89 insurance policy issued by the plaintiff, Imperial Casualty and Indemnity Company (insurer), to the defendant state of Connecticut (state) includes coverage for intentional torts.

I

In this appeal, a preliminary threshold burden for the state, as the appellant, to satisfy is whether, as a procedural matter, this issue is properly before this court.

With respect to procedural propriety, we all agree that the state did not preserve a very significant aspect of this central issue at trial. Moreover, we all agree, not only that the issue was not formally preserved at trial, but also that the state's articulated position at trial contradicted its argument on appeal. In its memorandum of decision on the plaintiff's motion for summary judgment, the trial court expressly observed that the state's memorandum of law "concede[d] that intentional behavior is not covered [by the 1986–89 policy]." The state has not, either by a motion for rectification at trial or on appeal, challenged the accuracy of the trial court's observation.

The question then becomes why this case warrants departure from our customary practice, under Practice Book § 60-5, formerly § 4061, to decline to undertake appellate review of issues that a party has failed to bring to the attention of the trial court. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 33, 717 A.2d 77 (1998) ("[w]e ordinarily do not address issues that have not been properly raised before the trial court"); *Santopietro* v. *New Haven*, 239 Conn. 207, 219–20, 682 A.2d 106 (1996) ("[o]ur rules already provide that we are not required to consider any claim that was not properly preserved in the trial court"). The majority opinion offers a number of reasons for doing so, none of which I find persuasive.

First, the opinion asserts that the general rule does not apply to issues of law, such as the interpretation of an insurance contract, for which this court, in appropriate cases, undertakes plenary review. It cites no authority for the proposition that issues of law categorically are excluded from the general rule set forth in the Practice Book. It is improbable that we would have adopted such an exclusion, because, as a matter of course, only issues of law provide an occasion for plenary review of a trial court's judgment. With respect to a trial court's factual findings, it has been undisputed, for at least twenty years, that appellate review is limited to a determination of whether the court's findings were "clearly erroneous." Practice Book § 60-5, formerly § 4061; see *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980), and its progeny. With respect to a trial court's conclusions of law, we repeatedly have heeded the cautions contained in the Practice Book rule. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 33–34; *Santopietro* v. *New Haven*, supra, 239 Conn. 219; *Chaplin* v. *Balkus*, 189 Conn. 445,

447, 456 A.2d 286 (1983) ("[n]othing in the record before us establishes that this case presents exceptional circumstances warranting departure from our well-established rule limiting appellate review to claims distinctly raised in the trial court").

Second, the opinion states that the question of an exclusion for intentional misconduct did not have to be raised at trial because it was intertwined with other coverage issues that are properly in this court. In effect, the majority's reasoning is that the issue is not new because it implicitly was raised at trial. In the absence of an express disclaimer in the trial court, I would agree. In this case, however, raising three arguments for a particular construction of a contract does not alert the court to a fourth, when that aspect of the coverage issue expressly was taken out of the case by the state at trial. We repeatedly have held that "[a] party cannot present a case to the trial court on one theory and then ask a reversal in the supreme court on another." (Internal quotation marks omitted.) *Grody* v. *Tulin*, 170 Conn. 443, 447, 365 A.2d 1076 (1976), quoting W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 305; see *Schaffer* v. *Schaffer*, 187 Conn. 224, 227–28 n.3, 445 A.2d 589 (1982) ("[w]e cannot find error in a trial court's failure to make a decision which it was never called upon to make"); *McNamara* v. *New Britain*, 137 Conn. 616, 618, 79 A.2d 819 (1951) ("[a] plaintiff cannot try his [or her] case on one theory and appeal on another").

Third, the opinion states that the issue is properly in this court because the parties have briefed it on appeal. Proffered as a general rule, this statement flatly contradicts Practice Book § 60-5. Section 60-5 may be misguided. If so, the Practice Book should be amended. Until its amendment, this court should not, in passing, deprive the provision of its operative effect. As it stands, the rule serves the salutary purpose of permitting the appellee to raise procedural and substantive issues

without having to waive one or the other. Under the proffered rule, the appellee would be required to take the risk of not briefing substantive issues in order to preserve its procedural claims. I am not prepared to assume that this is the preferred position. See W. Horton & S. Cormier, Rules of Appellate Procedure (1998 Ed.) § 4061, p. 156 ("[e]ven if it is likely that the Supreme Court will not review an issue, it is risky for the appellee not to brief the issue on the merits").

Fourth, the opinion relies on the fact that there is an adequate trial court record to enable us to resolve all the disputed issues now raised on appeal. Again, I would find that reliance to be reasonable in other circumstances, but not in this case in light of the state's express disclaimer of coverage for intentional torts at trial. See *Grody* v. *Tulin*, supra, 170 Conn. 447; *McNamara* v. *New Britain*, supra, 137 Conn. 618.

Finally, the opinion states that appellate consideration of whether the insurance contract excludes intentional torts is warranted because the insurer, as appellee, has not demonstrated that unfairness or unusual hardship will result from this court's expansive view of its appellate authority. It is not surprising that the insurer has made no such showing because no prior case has been cited that tied the provisions of § 60-5 to proof of prejudice. Again, § 60-5 may be wrongheaded in this respect. Many procedural rules take prejudice into consideration. As a matter of construction of the Practice Book as it is presently worded, however, the absence of any textual reference to prejudice must be assumed to have been intentional. It is unfair to require the insurer in this case to comply with a requirement of which it had no warning.

Despite my disagreement with the justifications stated in the majority opinion, I understand, of course,

that the principles stated in § 60-5 are permissive rather than mandatory. This court has the legal authority, in the exercise of its unlimited and unreviewable discretion, to depart from these principles whenever the court elects to do so. Similarly, this court has the legal authority, in the exercise of its unlimited and unreviewable discretion, to engage in free-ranging appellate decision-making that extends significantly beyond the issues raised by counsel. The fact is that, in a civil case applying only state law, no one can say us nay.

It is, however, a long leap to infer from our unlimited and unreviewable judicial authority a basis for the exercise of our unlimited and unreviewable judicial discretion in the circumstances of this case. Apart from the fact that the state is a party and that considerable money is at stake, this case involves only the construction of an insurance contract. Contrary to many of the cases upon which the majority opinion relies, this case presents no issue of statutory construction and, therefore, cannot serve as a precedent that might guide other statutory claimants. The legal claims that the state raises are not unique; neither party has argued any novel or pressing issue of insurance law. The state does not assert that this insurance policy is so widely replicated that clarification of its coverage will inform the rights of significant numbers of similarly situated litigants. Finally, because the state is not judgment proof, this is not a case in which denial of insurance coverage will deprive the underlying litigants of recovery for whatever relief they may obtain in federal court.

II

The majority opinion's substantive discussion, to my mind, is flawed because of its failure to take into account the state's concession at trial. One should start, on appeal, with the proposition that the 1986–89 policy

meant to exclude, and did exclude, *any* coverage for intentional torts, because of its policy exclusion for "any claim arising out of the willful violation of a penal statute or ordinance." That point of departure would lend considerable credibility to the insurer's argument that the policy defined an "occurrence" primarily as an "accident." I infer from the majority opinion's decision to overlook the state's trial court concession that it, too, is unprepared to sustain its judgment if the concession were given full effect.

I disagree, therefore, with the majority opinion's conclusion that, on the present record, because the insurer may have liability for other nonintentional torts, it must undertake the defense of state workers for whom such other torts allegedly are intertwined with intentional torts. If that is a correct construction of the contract, then no exclusion of intentional torts, no matter how exquisitely worded, would ever limit an insurer's coverage obligation in any case in which the underlying complaint raised claims of nonintentional tort arising out of the same fact situation as the alleged intentional tort. I doubt the propriety of such a conclusion.

Finally, the majority opinion appears to construe the insurance contract as if, as a matter of public policy, disclaimers of insurance coverage for intentional torts were disfavored. I know of no authority for that proposition. In fact, our case law stands for the proposition that, in applying common-law principles in the absence of a statutory mandate, we will interpret insurance contracts to avoid indemnifying an insured for its own wilful misconduct. See *Avis Rent A Car System, Inc. v. Liberty Mutual Ins. Co.*, 203 Conn. 667, 673–74, 526 A.2d 522 (1987); *Gionfriddo v. Avis Rent A Car System, Inc.*, 192 Conn. 280, 285–87, 472 A.2d 306 (1984); *Tedesco v. Maryland Casualty Co.*, 127 Conn. 533, 537, 18 A.2d 357 (1941) ("A policy which permitted an insured to recover from the insurer fines imposed for a violation

of a criminal law would certainly be against public policy. . . . If the language of the policy is reasonably open to two constructions, one of which would avoid such a result, that should be adopted.").

This is not a case in which, in my view, we should stretch our case law and Practice Book rules to protect the insured. This insurance contract is not a contract of adhesion but one in which there was a real opportunity for negotiation. The insured is the state, not an innocent consumer. Reading insurance contracts carefully may well be tedious, but the state hardly can be heard to say that, before accepting the 1986–89 policy, it was foreclosed from closely examining the policy and/or from comparing it, line by line, with its significantly broader predecessor. In light of the prevalence of civil actions under 42 U.S.C. § 1983, the state similarly cannot be heard to say that the importance of coverage for intentional torts was unforeseeable in 1986. The time to raise this coverage issue was at the negotiating table, not now on appeal.

In summary, in my view, the trial court conducted the proper analysis of the 1986–89 policy and came to the proper conclusion that the policy did not provide the coverage for which the state now argues. I would affirm its judgment.

Accordingly, I respectfully dissent.