COREGIS INSURANCE CO.

v.

Stanley M. GOLDSTEIN; Palmesi, Kaufman, Goldstein and Petrucelli, P.C.; and Heather Ridge Condominium Association, Inc.

No. 3:97cv522(AHN).

United States District Court,
D. Connecticut.

Dec. 23, 1998.

Megan W. Bartolone, Matthew J. Fink, Chicago, IL, of Bollinger, Ruberrg & Garvey, David J. Robertson, Bridgeport, CT, of Bar, Pollock & Coyne, for Coregis Ins. Co.

Alina C. Sterling, New Haven, CT, Jonathan Katz, New Haven, CT, of Jacobs, Grudberg, Belt & Dow, P.C., for Heather Ridge.

Jonathan B. Teopp, Stanford, CT, Catherine D. O'Connor, Stanford, CT, James F. Stapleton, Stanford, CT, of Day, Barry & Howard, for Palmesi, Kaufman, Goldstein and Petrucelli.

Arthur C. Laske, Trumbell, CT, for Stanley Goldstein.

## RULING ON MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

Plaintiff, Coregis Insurance Co. ("Coregis"), brings this action for a declaratory judgment against the defendants, Stanley M. Goldstein ("Goldstein"), Palmesi, Kaufman, Goldstein and Petrucelli, P.C. (the "Palmesi firm") and Heather Ridge Condominium Association, Inc. ("Heather Ridge"). Coregis alleges that pursuant to the terms of its claims-made insurance policy it does not have to defend and indemnify Goldstein and the Palmesi firm in a legal malpractice action Heather Ridge has filed against them in state court.

Now pending before the Court is Coregis's Motion for Summary Judgment. For the following reasons that motion [doc. # 18] is DENIED.

### STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c); *see Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (citation and internal quotation marks omitted). The burden of showing that no genuine dispute about an issue of material fact exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, a court is required to resolve all ambiguities and draw all inferences in favor of the nonmovant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citation omitted).

### BACKGROUND

In January 1989, Goldstein and Ralph L. Palmesi ("Palmesi") met with representatives of Heather Ridge to discuss the possibility of suing the developer of the Heather Ridge

condominium complex. (*See* Def. Stanley M. Goldstein's Stat. Pursuant to Local Rule 9(c)(2) ¶ 2.1 [hereinafter "Goldstein's Stat."]; Local Rule 9(c) Stat. of Material Facts as to Which There Exists a Genuine Issue to be Tried ¶ 2 [hereinafter "Heather Ridge's Stat."].) Goldstein met again with Heather Ridge to discuss the potential lawsuit on April 6, 1989. (*See* Goldstein's Stat. ¶ 2.1.) During this time period, Heather Ridge hired Goldstein and the Palmesi firm to pursue a lawsuit against the developer of Heather Ridge. (*See* Heather Ridge's Stat. ¶ 2.)

At various times between 1989 and the end of 1994, Heather Ridge contacted Goldstein to receive an update on the status of their case. (*See* Goldstein's Stat. ¶ 2.3; Local Rule 9(c)(1) Stat. of Undisputed Material Facts ¶ 5 [hereinafter "Coregis's Stat."].) On those occasions, Goldstein represented to Heather Ridge that the necessary paperwork for their case had been filed and that the case was progressing in the court system. (*See* Goldstein Stat. ¶ 2.3.) Goldstein claims he made those representations based on the assumption that another partner in the Palmesi firm had performed the required legal work. (*See id.*) Then, in December 1994, Anne Peterson ("Peterson"), the Managing Agent of Heather Ridge, requested a status report from Goldstein. (*See* Heather Ridge's Stat. ¶ 3.) After Goldstein failed to respond to Peterson's request she became concerned about whether a lawsuit had ever been filed on behalf of Heather Ridge and asked Heather Ridge's general counsel, attorney Steve Berg ("Berg"), to check the court docket for such a suit. (*See* Heather Ridge's Stat. ¶ 4; Coregis's Stat. ¶ 6.) Attorney Berg could not find a suit filed on behalf of Heather Ridge. (*See* Heather Ridge's Stat. ¶ 4.)

On January 13, 1995, Peterson wrote a letter to Goldstein that stated:

> Since you did not respond to my letter of December 9, 1994 the Board of Directors became very concerned as to whether an action was ever filed against the developer of Heather Ridge. The Board requested me to contact the associations [sic] general counsel to check the court records for any action. The associations [sic] counsel checked the court computer and could not

find any action in any superior court in the State of Connecticut. If there is such an action pending please advise me immediately and provide proof of same.

> If we do not hear from you within three days of the date of this letter we will assume there is no such action pending and will take appropriate action.

(Coregis's Stat. ¶ 7; *see also* Aff. of Megan W. Bartolone ("Bartolone") Ex. C (reproducing letter).) According to Peterson's undisputed affidavit, at the time she wrote this letter Heather Ridge had not evaluated its legal options to determine what appropriate action it would take and she personally believed that the most likely appropriate action was to turn the case against the condominium developer over to another attorney to pursue. (*See* Aff. of Anne Peterson ¶¶ 8–10; *see also* Heather Ridge's Stat. ¶ 6.) On January 27, 1995, Peterson wrote to Goldstein and requested Heather Ridge's file. (*See* Coregis's Stat. ¶ 8.) When Heather Ridge retrieved the file around early February 1995, the entire file consisted of an envelope with two sheets of paper. (*See* Goldstein Stat. ¶ 2.6; Coregis's Stat. ¶ 9.) No lawsuit had ever been filed on behalf of Heather Ridge. (*See* Heather Ridge's Stat. ¶ 4; Coregis's Stat. ¶ 9.) On April 19, 1995, Heather Ridge retained the law firm of Jacobs, Grudberg, Belt & Dow, P.C. to advise them. (*See* Aff. of Peterson ¶¶ 12–13.)

Based upon an application dated June 5, 1995 and a letter dated June 26, 1995, Coregis issued a Lawyers Professional Liability Insurance Policy (the "Policy") to the Palmesi firm. (*See* Coregis's Stat. ¶ 18; *see also* Aff. of Bartolone Ex. A.) The Policy covered the period of July 8, 1995 to July 8, 1996. (*See* Coregis's Stat. ¶ 18; *see also* Aff. of Bartolone Ex. A.) The Policy excluded certain claims from coverage including, *inter alia:*

> Any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM.

(Aff. of Bartolone Ex. A (reproducing Policy).) This exclusion is "Exclusion B" of the Policy. (*See id.*)

On June 30, 1995, Peterson sent a notice to the Heather Ridge unit owners that stated:

We discovered in January of 1995 that Attorney Goldstein and his firm never filed a lawsuit on our behalf. We are exploring our legal options concerning this problem, which includes bringing court action against the responsible parties. We have retained the law firm of Grudberg, Belt & Dow, P.C. [sic] to advise us.

(Aff. of Peterson ¶ 13.) On July 17, 1995, Anthony Romano, the president of Heather Ridge, filed a grievance against Goldstein. (*See* Coregis's Stat. ¶ 10.) Following a January 1996 hearing, on April 16, 1996, a grievance review panel issued a proposed decision finding that Goldstein had violated the Rules of Professional Conduct by, *inter alia,* failing to keep his client informed about the status of its case and misrepresenting the status of the case to his client. (*See* Coregis's Stat. ¶¶ 12, 17.)

On September 21, 1995, Heather Ridge filed a legal malpractice suit against Goldstein and the Palmesi firm in Connecticut state court. (*See* Coregis's Stat. ¶ 3.) The suit alleged that Goldstein and the Palmesi firm failed to file a lawsuit on behalf of Heather Ridge in a timely manner and misrepresented to Heather Ridge the status of its case. (*See* Coregis's Stat. ¶¶ 4–5.) Goldstein's undisputed affidavit states that until he received Heather Ridge's grievance against him, he was not aware that the applicable statute of limitations had run prior to his providing Heather Ridge with its file around the end of January, 1995. (*See* Aff. of Stanley M. Goldstein ¶ 10; *see also* Goldstein's Stat. ¶ 2.7.)

Attorneys Richard N. Kaufman ("Kaufman"), Robert R. Petrucelli ("Petrucelli"), and Palmesi make the undisputed claim that prior to July 12, 1996 they did not have any knowledge of the status of the communications between Heather Ridge and Goldstein or of the grievance and malpractice claims filed against Goldstein. (*See* Def. Palmesi, Kaufman, Goldstein & Petrucelli, P.C.'s Stat. Pursuant to Local Rule 9(c)(2) ¶¶ 1–6 [here-

inafter "Palmesi firm's Stat."]; *see also* Aff. of Ralph L. Palmesi ¶¶ 5–8; Aff. of Richard N. Kaufman ¶¶ 5–8; Aff. of Robert R. Petrucelli ¶¶ 5–8.) On July 23, 1996, the Palmesi firm notified Coregis of Heather Ridge's malpractice suit against it and requested that Coregis defend and indemnify them. (*See* Coregis's Stat. ¶ 19; *see also* Palmesi firm's Stat. ¶ 11.) Currently, Coregis is funding the defense of Goldstein and the Palmesi firm against Heather Ridge's malpractice suit pursuant to a reservation of its rights to seek declaratory relief based on the terms of the Policy. (*See* Coregis's Stat. ¶ 20.)

## DISCUSSION

A federal court's power to issue a declaratory judgment emanates from 28 U.S.C. § 2201 which provides in relevant part:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201(a) (West 1994 and Supp. 1998).

■■■ A district court has discretion in determining whether to grant or deny declaratory relief. *See Continental Cas. Co. v. Coastal Sav. Bank,* 977 F.2d 734, 736–37 (2d Cir.1992). However, an appellate court reviews a district court's decision *de novo. See id.; see also Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 (2d Cir.1969) (ruling that appellate court would exercise its independent judgment in determining whether a declaratory judgment action should be entertained). In *Broadview,* the Second Circuit stated that a court shall entertain a declaratory judgment action when such judgment will either (1) serve a useful purpose in clarifying and settling the legal relations at issue, or (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See* 417 F.2d at 1001.

Here, Coregis alleges that the undisputed facts of this case warrant the conclusion that Coregis does not have to defend and indemnify Goldstein and the Palmesi firm against Heather Ridge's suit because Exclusion B of the Policy applies. Coregis claims that Exclusion B provides an objective standard that governs whether the exclusion applies in this case. Specifically, Coregis argues that Goldstein could have reasonably foreseen at the effective date of the Policy that his failure to file a timely lawsuit on behalf of Heather Ridge might be expected to be the basis of a claim.

Goldstein, the Palmesi firm and Heather Ridge all filed individual oppositions to Coregis's motion for summary judgment. Nevertheless, many of their arguments overlap. All of the defendants argue that Coregis has failed to prove that reasonable minds could not differ as to whether Goldstein knew or could have reasonably foreseen that Heather Ridge would make a claim. In particular, the defendants point out that Peterson's January 13, 1995 letter to Goldstein did not indicate to him that any type of claim might be filed. Further, they argue that because different statutes of limitation applied to Heather Ridge's potential claims that, even if all of the statutes had run by January 1, 1995, the complexity of the statutes involved raise a material issue of fact in regard to whether Goldstein reasonably should have known that all of the statutes had run. The defendants also assert that what a reasonable attorney could have foreseen is a question of fact which must be determined by a trier of fact and which may require expert testimony.

In addition, the Palmesi firm and Heather Ridge argue that it is against Connecticut public policy to relieve Coregis of its duty to defend and indemnify in this case because it would cause a disproportionate forfeiture and Coregis's interests have not been prejudiced. The Palmesi firm and Heather Ridge each raise one additional argument. The Palmesi firm argues that Goldstein may have suffered from a mental disability that affected his knowledge and actions. Heather Ridge argues that Exclusion B violates the Connecticut claims-made insurance policy regulations.

The resolution of Coregis's motion depends, in part, on the interpretation of the Policy and, in particular, of Exclusion B. Generally, the interpretation of an insurance contract is a matter of law to be decided by a court. *See Imperial Cas. & Indem. Co. v. State,* 246 Conn. 313, 322, 714 A.2d 1230 (1998). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Id.* at 324, 714 A.2d 1230 (citation and internal quotation marks omitted). A court must view an insurance contract in its entirety and determine the intent of the parties in entering into it from the four corners of the policy. *See id.* at 325, 714 A.2d 1230. The words of a policy should be accorded their natural and ordinary meaning with any ambiguity in the terms of the policy construed in favor of the insured. *See id.* The rule that a policy should be construed in favor of the insured applies to exclusion clauses. *See id.*

Here, the undisputed facts show the following. One, that five years after the initial meeting in 1989 between representatives of the Palmesi firm and Heather Ridge neither Goldstein nor any member of the Palmesi firm had filed a complaint on behalf of Heather Ridge. Two, at various times during that five year period, Heather Ridge contacted and, thereby, reminded Goldstein about their lawsuit. Three, in January 1995, Peterson sent a letter to Goldstein which stated that if a lawsuit had not been filed, Heather Ridge would take "appropriate action." Four, Heather Ridge did not file a grievance, sue Goldstein and the Palmesi firm for malpractice, or indicate to any member of the Palmesi firm that it intended to sue until after the effective date of the Policy. Five, Peterson did not believe that "appropriate action" signified that Heather Ridge would sue for malpractice. Six, Goldstein claims that he did not know that the statute of limitations had expired on Heather Ridge's claim against its developer until Heather Ridge filed a grievance against him. Seven, approximately five months elapsed between the last time Goldstein or any member of the Palmesi firm had contact with a

representative of Heather Ridge and the effective date of the Policy.

The Court concludes that these facts raise a genuine issue of material fact in regard to whether Goldstein, an attorney, could have reasonably foreseen that his acts, errors and/or omissions might be expected to be the basis of a claim by Heather Ridge. The Court finds most of the cases Coregis cites to be distinguishable because they involved situations where there were much clearer indications that a lawsuit might be initiated. *See, e.g., Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins.,* No. 70655, 1997 WL 597407, at *2 (Mo.App. E.D. Sept.16, 1997) (involving claim against law firm where prior to date of policy application and effective date of policy law firm received letter from dissatisfied client stating "I could file a lawsuit against you right now"); *see also Mt. Airy Ins. Co. v. Klatsky & Klatsky,* No. Civ. 96–1231, 1997 WL 235131 (D.N.J. Jan.28, 1997) (involving claim against insured attorney who had received prior to effective date of policy a letter from an attorney stating that a previous client of the insured attorney reserved "claims against you for any losses it incurs"); *The Home Ins. Co. v. Cassidy,* Civ. No. 92–3013, slip op. at 2, (D.N.J. November 23, 1993) (involving malpractice action against law firm where prior to renewal of policy law firm attempted to enter into unethical release of malpractice claims); *Putney Sch., Inc. v. Schaaf,* 157 Vt. 396, 599 A.2d 322, 329 (1991) (involving suit by terminated employee where prior to effective date of policy former employer had been contacted by attorney who indicated belief that termination was improper and who held settlement discussion with employer's attorney).

Coregis relies on several other district court cases from other jurisdictions that have fact patterns that are arguably similar to this case. Nevertheless, the Court declines to follow these decisions because the Court does not find their reasoning persuasive, but instead, believes they give too expansive of a reading to the exclusion provisions of the contracts they interpreted. *See Mt. Airy Ins. Co. v. Thomas,* 954 F.Supp. 1073, 1080 (W.D.Pa.1997) (finding similar policy exclusion applied where attorney knew he had not prosecuted a client's claim for approximately twelve years and that as a result the claim had been dismissed); *Pelagatti v. Coregis Group,* Civ.A. No. 95–2925, 1996 WL 184474 (E.D.Pa. April 10, 1996) (interpreting similar policy language to find that insurance company did not have to defend and indemnify attorney sued for malpractice even though lawsuit was not filed against attorney until over a year after his representation of client ended); *Bankers Trust Co. v. Old Republic Ins. Co.,* No. 87 C 7853, 1993 WL 311787, at *7 (N.D.Ill. Aug.10, 1993) (interpreting similar policy exclusion to find insurance company did not have to defend and indemnify oil and gas property appraisal firm where several independent auditors had accused appraisal firm of incompetence and plaintiff had refused to waive claims against appraisal firm when it had settled with another company).

The Court concludes that under the circumstances of this case that a reasonable fact finder could determine that the phrase "appropriate action" did not indicate that Heather Ridge intended to sue Goldstein and the Palmesi firm. In particular, the court notes that Peterson states that she did not think appropriate action meant that Heather Ridge intended to sue Goldstein and the Palmesi firm. While Peterson's understanding of what appropriate action meant is not dispositive of the issue, the fact that she thought it meant something other than suing Goldstein and the Palmesi firm does suggest that reasonable minds may differ as to what the phrase meant. Further, the Court notes that a five month period elapsed between the end of the attorney-client relationship and the effective date of the Policy. The Court believes that a reasonable fact finder could decide given a delay of that length that an attorney would not reasonably foresee that a claim might be expected.

Lastly, the Court notes without deciding that the complexity of the statutes of limitation involved in this case may also raise a genuine issue of material fact. *Cf. Mt. Airy Ins.,* 954 F.Supp. at 1080 (noting that where "attorney does not know he has made an error .... he can not know or expect that a malpractice claim might or could result").

Given its determination with respect to Coregis's arguments, the Court expresses no opinion on the other issues the defendants have raised.

## CONCLUSION

For the reasons stated above, Coregis's Motion for Summary Judgment [doc. # 18] is DENIED.