[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a holder of a Connecticut podiatric medical license. The defendant, Connecticut Board of Examiners in Podiatry ("Board"), in a decision dated July 24, 1996, suspended his license for six months, and fined him $2,000.
The plaintiff is aggrieved by the defendant's decision and has timely filed this; appeal pursuant to the Uniform Administrative Procedures Act (UAPA), General Statutes §§ 4-166, et seq., specifically General Statutes § 4-183.
The department of public health and addiction services ("department") presented an amended statement of charges, dated February 10, 1995, to the Board alleging in seven counts that the plaintiffs conduct subjected his license to disciplinary action pursuant to General Statutes §§ 20-59 (3), (4) and (11) in conjunction with the Regulations of Connecticut State Agencies ("Regulations") §§ 19a-14-40 and 19a-14-41 (R. Ex. # 2).[1]
CT Page 532
In his answer to the formal complaint, the plaintiff in special defenses raised issues relating to the timeliness or age of several of the incidents underlying the complaint.
The charges in the formal complaint essentially deal with the treatment of two patients. Ms. Caron was treated by the plaintiff in 1985 and 1987. Ms. Morrison was treated by the plaintiff in 1993.
In its decision, the Board found with respect to the various counts of the complaint:
First Count: Plaintiff's conduct fell below the acceptable standard of care for podiatrists in his surgical treatment of Ms. Caron on April 18, 1985.
Second Count: Plaintiff's conduct fell below the acceptable standard of care in 1987 in his use of Versed, a medication, during Ms. Caron's surgery.
Third Count: Between 1983 and 1987 plaintiff fell below an acceptable standard of care because he removed more than normal amount of bone from Ms. Caron during those procedures.[2]
Sixth Count: Plaintiff's conduct in performing a vascular analysis on Ms. Morrison in May of 1993 fell below an acceptable standard of care for podiatrists.
Seventh Count: Plaintiff in submitting a health insurance claim form for the Morrison treatment did not represent what was done and was fraudulent and deceptive.
The plaintiff's license to practice podiatric medicine is a property right protected by due process of law under both the United States[3] and Connecticut Constitutions.[4] Bell v. Burson,402 U.S. 535, 539 (1971), Pet v. Dept. of Health Services, 228 Conn. 651,682 (1994). Plaintiff argues that his constitutional right to due process of law prior to the deprivation of his license was denied by the untimeliness of the process.
The complainant patient, Ms. Caron, was seen by the plaintiff between January 12, 1985, and May 11, 1988. The surgeries which were found to be improperly performed occurred on April 18, 1985, and February 19, 1987. (R. pp. 50-53.) Ms. Caron complained to the commissioner of the department on October 21, 1992, more than four CT Page 533 years after her last visit with plaintiff. The surgeries had been conducted over seven and five years prior to the complaint. Plaintiff in her complaint (R. pp. 46-47) indicates that she was referred by her insurance company to Dr. Loren Schneider who with his partner Dr. Conar criticized Dr. Baer's surgery. Ms. Caron does not specify the date when she learned of this alleged negligence, but the record reveals that she saw Dr. Schneider regularly between June 7, 1988, and May 8, 1991.
The plaintiff was notified of the complaint by compliance letters of May 10, 1994, and September 15, 1994. (R. pp. 43-46.) The earliest compliance notice would have been nine years from the first surgery and seven years from the subsequent procedure. The Regulations provide that plaintiff need only keep his x-ray records for three years. Regulations of Connecticut State Agencies § 19a-14-42 (c). Plaintiff's surviving medical records indicate that Ms. Caron was x-rayed on January 12, 1985, May 8, 1985, November 4, 1986, March 4, 1987, March 11, 1987, March 18, 1987, March 23, 1987, March 25, 1987, April 1, 1987, April 8, 1987 and June 23, 1987. None of these x-rays survive as they were more than five years old at the time of Ms. Caron's complaint, and were destroyed by the plaintiff pursuant to the department's regulations.
The court in sustaining plaintiff's claim because of the denial of due process of law occasioned by the delay in the hearing and the age of the underlying incidents is not adopting a specific bright line time test. Clearly the department and the Board could appropriately go back many years regarding issues of fraudulent credentials, or concealment of the existence of a claim. This case lacks such extraordinary circumstances which would justify requiring a person to answer for the particulars of their conduct a decade previously.
The plaintiff did not file a formal complaint until January of 1995. The hearing did not commence until May 24, 1995, concerning the April 1985 and February 1987 surgeries.
The due process requirement of a hearing encompasses the right to a hearing "at a meaningful time." Armstrong v. Manzo, 380 U.S. 545,552 (1965). In a license revocation proceeding the failure to provide either a pre-suspension or prompt past suspension hearing has been found to violate due process hearing requirement. Barry v. Barchi,443 U.S. 55, 67 (1979). Also, see Cleveland Board of Education v.Loudermill, 470 U.S. 532 (1985); wherein a pre-suspension hearing was mandated under a due process of law analysis. CT Page 534
The state and federal Constitutions require speedy trials in criminal prosecutions. See U.S. Constitution Sixth Amendment, Connecticut Art. 1 § 8. In assessing speedy trial claims under both federal and state constitutional law the courts balance four factors: length of delay; reason for delay, defendant's assertion of his right and prejudice to defendant. "[N]one of the factors standing alone demands a set disposition, rather it is the total mix which determines whether the defendant's right was violated." State v. Nims, 180 Conn. 589, 591-92 (1980). See also Barker v. Wingo, 407 U.S. 514, 530 (1972); State v.Wall, 40 Conn. App. 643, 651 cert. denied, 237 Conn. 924
(1996); State v. Lloyd, 185 Conn. 199, 208 (1981).[5]
The criteria of the speedy trial analysis highlight the unfairness of the process in the instant case. There is no explanation of the patient's waiting over five years from the 1987 procedure to initiate a complaint. The patient was reportedly aware of the problems when assessed by Dr. Schneider in 1988. There is an extreme delay of over ten years between the 1985 surgery and hearing date. There is no reason attributable to plaintiff for the delay. Plaintiff asserted his objection to the timeliness of charges in his initial answer to the complaint. There is also evidence of prejudice to the plaintiff. The plaintiff last saw the patient, Ms. Caron, in 1988. Thus, pursuant to department regulations he was authorized to and did dispose of his records three years later. Plaintiff's expert witness indicated that he was unable to give an opinion because of the absence of plaintiff's x-rays. Accordingly, we have an extreme delay between the incident underlying the license suspension and the hearing date, no explanation for the delay, plaintiff's prompt assertion of his rights, and prejudice to the plaintiff.[6]
The plaintiff's rights to due process of law and fairness of administrative proceedings were violated with respect to the proceedings on the Caron complaints. See Grimes v. ConservationCommission, 243 Conn. 266, 273-74 (1997)
The plaintiff also was disciplined with respect to his treatment of Ms. Morrison in May of 1993 and the billing for such treatment.
The charges related to Ms. Morrison's treatment are measured under the substantial evidence rule. CT Page 535
Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. (Citations and internal quotation marks.) Dolgner v. Alander,237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.) Dolgner v. Alander,supra, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The court now turns to the sixth count concerning the plaintiff's conduct in treating Ms. Morrison for the callouses on her feet on March 11, 1993. The record demonstrates that Ms. Morrison experienced persistent problems with callouses. Since the summer of 1971, she has been seeing doctors to have the recurring callouses removed. Thus, Ms. Morrison had experience in the very treatment she sought to receive from the plaintiff: the removal of the painful callouses, also known as debridement.
In performing this procedure, the plaintiff conducted a test known as a vascular analysis, which utilizes a machine to test the blood circulation of the patient. Ms. Morrison testified that she had never, in all her years of treatment CT Page 536 with various podiatrists, had a vascular analysis performed on her. Dr. Michael Sabia, the defendant's expert in podiatric medicine, also testified that this test was not called for given the nature of Ms. Morrison's callouses, which were located on the surface of her skin. Dr. Sabia considered the utilization of this test unnecessary and a breach of the plaintiff's standard of care to Ms. Morrison.
Count seven charges the plaintiff with fraudulent or deceptive conduct in violation of General Statutes § 20-59
(3), in that the claim form submitted to Ms. Morrison's insurance company asked for reimbursement for treatment that was not rendered. The evidence, including Dr. Sabia's detailed testimony concerning physician billing and diagnostic codes, demonstrates that the treatments included in the health insurance claim form in exhibit 14 did not correspond to the plaintiff's treatment notes, i.e. the treatment received.
For example, the plaintiff charged for diagnosis and treatment of circulation problems and an infection of an unspecified nature, which were not indicated in the plaintiff's treatment notes. He also charged for a more invasive procedure for removing callouses than that which was actually performed.
There is substantial evidence to support the findings and conclusions of the Board related to the plaintiff's treatment and billing concerning Ms. Morrison.
The Board entered concurrent six month suspensions against plaintiff for each violation.
The appeal is sustained. The case is remanded to the Board with directions to vacate all findings and reprimands related to the treatment of Ms. Caron.
In view of the Board's improper consideration of the Caron charges, the Board is also directed to review the sanctions in keeping with the modification of the Board findings. See Ardt v. Department of Pro. Regulation,578 N.E.2d 128, 134 (Ill. 1991).
Robert F. McWeeny, J. CT Page 537