ALAN P. TOWBIN *v.* BOARD OF EXAMINERS
OF PSYCHOLOGISTS
(AC 20944)

Lavery, C. J., and Schaller and West, Js.

Argued May 1—officially released July 23, 2002

*Patricia A. King*, for the appellant (plaintiff).

*Paul J. Lahey*, assistant attorney general, with whom were *Henry A. Salton*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and

*Richard J. Lynch*, assistant attorney general, for the appellee (board).

*Opinion*

WEST, J. The plaintiff, Alan P. Towbin, appeals from the judgment of the trial court dismissing his administrative appeal from the decision of the defendant board of examiners of psychologists (board), which sanctioned him for negligent, incompetent or wrongful conduct in violation of General Statutes § 20-192.[1] On appeal, the plaintiff raises a number of claims that fall within several different categories, namely, that the court improperly dismissed his appeal because the board failed to base several of its findings on substantial evidence, sanctioned him where only one member of its hearing panel had heard witnesses testify, violated

[1] General Statutes § 20-192 provides that the board of examiners of psychologists "may take any action set forth in section 19a-17, if the license holder: Has been convicted of a felony; has been found by the board to have employed fraud or deceit in obtaining his license or in the course of any professional activity, to have violated any provision of this chapter or any regulation adopted hereunder or to have *acted negligently, incompetently or wrongfully in the conduct of his profession*; practiced in an area of psychology for which he is not qualified; is suffering from physical or mental illness, emotional disorder or loss of motor skill, including but not limited to, deterioration through the aging process or is suffering from the abuse or excessive use of drugs, including alcohol, narcotics or chemicals. The Commissioner of Public Health *may order a license holder to submit to a reasonable* physical or *mental examination* if his physical or mental capacity *to practice safely is the subject of an investigation.* Said commissioner may petition the superior court for the judicial district of Hartford to enforce such order or any action taken pursuant to section 19a-17. Notice of any contemplated action under said section, of the cause therefor and the date of hearing thereon shall be given and an opportunity for hearing afforded as provided in the regulations adopted by the Commissioner of Public Health. The Attorney General shall, upon request, furnish legal assistance to the board. Any person aggrieved by any action of the board may appeal therefrom as provided in section 4-183, except such appeal shall be made returnable to the judicial district where he resides. Such appeal shall have precedence over nonprivileged cases in respect to order of trial." (Emphasis added.)

Amendments to § 20-192 subsequent to 1985 are technical in nature and do not affect the present case.

his constitutional rights to due process and to fundamental fairness, and imposed a penalty that is excessive and unsupported by good cause. We affirm the judgment of the trial court.

The record discloses the following procedural history and facts. In 1991, a woman[2] (complainant) filed a complaint against the plaintiff with the department of public health services (department).[3] At the time, the plaintiff was a licensed psychologist providing psychotherapy services. The department investigated the complaint and concluded that there was probable cause to believe that the plaintiff had violated § 20-192. In 1994, the department presented the board with a statement of charges against the plaintiff.[4] A hearing panel consisting of one professional and two public members of the board[5] thereafter held a five day contested hearing in accordance with General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act (UAPA). The

---

[2] We decline to identify the complainant to protect the privacy of her children, who were the plaintiff's patients. See General Statutes § 52-146c.

[3] On July 1, 1993, the department of health services became known as the department of public health and addiction services. See Public Acts 1993, No. 93-381, §§ 9, 39. On July 1, 1995, the department of public health and addiction services became known as the department of public health. See Public Acts 1995, No. 95-257, §§ 12, 21, 58.

[4] In July, 1992, prior to initiating charges against him, the department offered the plaintiff the opportunity to attend a compliance conference to demonstrate his compliance with the lawful requirements to retain his license.

[5] General Statutes § 20-186 (a) provides in relevant part: "The Board of Examiners of Psychologists shall consist of five members appointed by the Governor, *three of whom shall be practicing psychologists in good professional standing and licensed according to the provisions of this chapter* and two of whom shall be public members. Each such member shall be a resident of this state. No member of said board shall be an elected or appointed officer of any professional association of psychologists or have been such an officer during the year immediately preceding his appointment. The Governor shall designate one member as chairman of said board and shall fill any vacancy therein by appointment for the unexpired portion of the term. No member shall serve for more than two full consecutive terms commencing after July 1, 1980. . . ." (Emphasis added.)

plaintiff was represented by counsel and given the opportunity to respond to the charges, to cross-examine witnesses, to present evidence, including his own testimony, and to present argument on all issues involved in the case.

In 1996, the board rendered a decision, concluding that the department had proved that the plaintiff had violated the standards of professional conduct and § 20-192 by engaging in dual relationships with the complainant. In addition to a professional relationship, the plaintiff and the complainant had social and sexual relationships. In response to the decision, the plaintiff filed an appeal in the Superior Court, pursuant to General Statutes § 4-183 (a), and petitioned the board to reconsider its decision. In support of his appeal and his petition, the plaintiff claimed that the decision was not supported by expert opinion evidence and that the board had no authority to require that the plaintiff receive psychotherapeutic treatment as a condition of probation. The board, on its own motion and on the basis of a petition by the plaintiff, granted the plaintiff's request for reconsideration.[6]

On May 13, 1997, the board ordered the record opened and informed "the parties that a majority of the [panel] who will render the reconsidered decision in this matter are psychologists and that the [panel's] experience, technical competence and specialized knowledge will be used in the evaluation of the evidence in accordance with [General Statutes] § 4-178 (8). Any motions relating to or resulting from this order must be received no later than May 30, 1997."

A reconfigured hearing panel, the majority of which were professional members of the board, reconsidered the department's charges against the plaintiff. Due to the panel reconfiguration, the board offered the plaintiff

---

[6] The plaintiff's appeal from the 1996 decision therefore became moot.

the opportunity to present additional expert testimony as to the standard of professional care of psychologists applicable to the facts of this case. The plaintiff took advantage of the opportunity and presented the testimony of two expert witnesses at the continued hearing. The panel, however, refused to let the plaintiff testify at the continued hearing. All new members of the panel received copies of the entire record and attested that they either had heard or had read the entire record.

On May 26, 1998, the board issued a proposed decision and gave the parties an opportunity to file exceptions and briefs, and to present oral argument with regard to the proposed decision. The board subsequently issued its decision on June 12, 1998. The board stated that the decision was based on the record and on the specialized knowledge of the board. The plaintiff appealed to the Superior Court.

The court concluded that the board properly found, on the basis of the evidence presented and the expertise of the board's professional members, that the plaintiff had provided professional psychological care and treatment to the complainant's older son, who was then a minor, between February and June, 1984. The boy stopped treating with the plaintiff in June, 1984. In March, 1985, another psychologist who was then treating the complainant's older son, asked the plaintiff to serve as a consultant at a meeting with the complainant, her husband and her two sons.

The plaintiff and the complainant thereafter developed and engaged in social and sexual relationships that lasted from about October, 1985, to March, 1986. There was substantial evidence that the plaintiff and the complainant stayed together in a Branford motel and in a Boston hotel. They also engaged in sex several times a week, sometimes in the plaintiff's office. The plaintiff presented the complainant with gifts. Prior to

the termination of their social and sexual relationships, the complainant arranged for the plaintiff to conduct psychological testing of her younger son. After the testing took place, the plaintiff met with the complainant to discuss treatment for the younger son. This meeting took place within a few days of the plaintiff's and the complainant's termination of their nonprofessional relationships. The board found that care and treatment by a psychologist includes evaluation, diagnosis and involvement in subsequent psychotherapy or treatment or both. The board concluded that the plaintiff's contact with the complainant's sons therefore constituted care and treatment.

At the original hearing, David Greenfield, a psychologist, gave expert testimony as to the standard of professional care of psychologists. Greenfield opined, and the board agreed, that dual relationships are relationships where the contractual psychologist-patient relationship is complicated by adding other relationships that are not specifically related to therapy. Psychologists are ethically bound to avoid dual relationships, as such relationships could impair their judgment or increase the risk of exploitation of clients, patients or consumers.

Greenfield also opined, and the board agreed, that parents of minors being treated by a psychologist are consumers and that the plaintiff was ethically bound to avoid dual relationships with the complainant. Greenfield further opined, and the board agreed, that the plaintiff engaged in dual relationships with the complainant, including but not limited to social, friendship and sexual relationships. The plaintiff thereby violated the ethical standards of care in place for psychologists practicing in Connecticut in 1985 and 1986. The violation occurred despite the fact that the dual relationships took place after the complainant's older son stopped

treating with the plaintiff and after the young man had reached the age of majority.

The board credited the complainant's testimony that she and the plaintiff had had a sexual relationship and found that the plaintiff's explanation of the nature of his relationships with the complainant was not credible. In concluding that the plaintiff violated § 20-192, the board found that the plaintiff's "conduct demonstrates a serious failure of judgment, as was also found by [the plaintiff's] expert, Ronald Ebert, [a psychologist]. [The plaintiff] continues to deny any wrongdoing and has offered an implausible explanation. Dr. Ebert acknowledged [the plaintiff's] denial of a sexual relationship with [the complainant], but conceded that if such relationship had occurred, it would have been even more reflective of poor judgment on the part of the [plaintiff]."

The board also found that with limited exceptions, "permitting [the plaintiff] to engage in any further treatment or therapeutic relationships as a psychologist, would present a danger to the public at this time. The [board found] that the [plaintiff] engaged in negligent, incompetent or wrongful conduct as a psychologist for the reasons" stated.[7]

The board ordered that the plaintiff be placed on probation indefinitely with the following restrictions and conditions. While the plaintiff is on probation, (1) he shall not render treatment to patients or clients in any setting except nursing homes, where he may provide

---

[7] The board concluded that the department did not sustain its burden of proof as to its allegations that the plaintiff had provided psychotherapeutic care and treatment to the complainant during the time referenced in the statement of charges or that he had failed to maintain complete psychological records of his diagnosis, assessment, treatment or prognosis of the complainant. It also concluded that the department did not sustain its burden of proof as to its allegation that the plaintiff had engaged in a business relationship with the complainant.

individual and group therapy to nursing home patients and consult with nursing home staff regarding psychological issues, (2) after being on probation for at least one year, the plaintiff may ask the board to withdraw or to modify the terms of his probation, (3) in asking the board to withdraw or to modify the terms of his probation, the plaintiff may employ, but is not required to employ, the following procedure: (a) submit to a psychological evaluation conducted by an independent psychologist approved by the department; (b) if the independent psychologist determines that the plaintiff would benefit from individual psychotherapy, the plaintiff should engage in individual psychotherapy on a clinically recommended schedule for at least one year of his probation; and (c) prior to seeking the withdrawal or modification of his probation, the plaintiff should submit to a psychological reevaluation. The board ordered that the plaintiff may not come before it more than once a year to ask that his probation be withdrawn or modified. The board may withdraw the plaintiff's probation or modify its terms if, in its discretion, the board finds that the charged circumstances that required the board to impose the previously mentioned sanctions on the plaintiff have been remedied sufficiently. The board assessed a civil penalty of $10,000 against the plaintiff, but stayed the payment of the penalty as long as the plaintiff complies with the terms of his probation. The board further ordered that the civil penalty shall be withdrawn if the plaintiff satisfactorily completes all of the conditions of his probation.

The plaintiff appealed from the board's 1998 decision to the trial court, claiming that the board improperly (1) found that the plaintiff's testimony was implausible, his conduct violated the standard of care and his continuing to practice psychotherapy presents a danger to the public, (2) failed to have all members of the reconfigured panel hear the witnesses testify, (3) imposed an

excessive penalty and (4) denied the plaintiff due process of law due to the long delay between the time of his improper conduct and the rendering of the board's decision. After reviewing the record and the parties' briefs and hearing oral argument, the court dismissed the plaintiff's appeal. The plaintiff appealed to this court.

"We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [UAPA] . . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [Constrained by a narrow scope of review] [n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6).[8] An administrative finding is supported by substantial evidence if the

---

[8] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decision are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *Elf* v. *Dept. of Public Health*, 66 Conn. App. 410, 417–19, 784 A.2d 979 (2001).

"The present appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered in accordance with the [UAPA]." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 660–61, 638 A.2d 6 (1994).

I

The plaintiff's first claim is that the court improperly dismissed his appeal upon concluding that the board's decision was not predicated on its finding that the plaintiff's testimony was not credible. In other words, the plaintiff claims that because the panel did not believe his testimony that he did not have a sexual relationship with the complainant, it concluded that the opposite must be true.[9] The plaintiff's claim fails because there

---

[9] In support of his claim, the plaintiff cites *Novak* v. *Anderson*, 178 Conn. 506, 423 A.2d 147 (1979). "It is established law that it is error for a court to submit to the jury an issue which is wholly unsupported by the evidence. . . . While it is true that it is within the province of the jury to accept or reject a board's testimony, a jury in rejecting such testimony cannot conclude that the opposite is true. . . . A jury cannot, from a disbelief of a board's

is substantial evidence in the record to support the board's conclusion that he engaged in a sexual and a social relationship with the complainant.

The plaintiff asserts his claim on the basis of a comparison of statements from the board's 1996 decision and its 1998 decision. To wit, the 1996 decision stated that the plaintiff's "overwhelming failure to provide a plausible explanation leads [the board] to conclude that he and [the complainant] were engaged in a sexual relationship." The 1998 decision stated that the plaintiff's "overwhelming failure to provide a plausible explanation confirms the [board's] conclusion that he and [the complainant] were engaged in a sexual relationship." The plaintiff argues that the subtle change in language is proof that the board concluded that he had a sexual relationship with the complainant on the basis of his testimony.

"The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . In determining whether an administrative finding is supported by substantial evidence, the reviewing court must defer to the agency's assessment of the credibility of witnesses. . . . The reviewing court must take into account contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) Id., 668.

The court noted that the board's 1998 decision contained findings that the board credited the complainant's testimony that she and the plaintiff had had a sexual relationship although the board did not believe

testimony, infer that a plaintiff's allegation is correct." (Citations omitted.) Id., 508.

that the complainant accurately had reported all of the details of the relationship. The board found that the plaintiff and the complainant had sexual relations in motel or hotel rooms in Branford and Boston. The plaintiff gave the complainant a wooden box bearing the symbol of a heart and books. The board found that the plaintiff's testimony was not credible because he was unable to provide a plausible explanation as to the nature of his relationship with the complainant. The board concluded that the plaintiff's testimony was so implausible that it raised serious questions about what he was attempting to hide. The plaintiff's testimony that he had a business, but not a sexual, relationship with the complainant was not credible. He could not describe the content of their business conversations. The complainant's name was in the plaintiff's appointment book; the two met frequently and for long periods of time. The plaintiff permitted the complainant to make arrangements for the Boston hotel room and sought no alternative to sharing the room with her.

On the basis of our review of the record, we conclude that the court properly declined to set aside the board's conclusion that the plaintiff had had a sexual relationship with the complainant. The conclusion is supported by substantial evidence and the panel's assessment of the more credible of the conflicting testimony. Nothing in the record supports the plaintiff's suggestion at oral argument that the board had shifted the burden of proof to him to prove that he did not have a sexual relationship with the complainant. The court determined that the plaintiff's "failure to provide a plausible explanation of his relationship with [the complainant] confirmed the [board's] conclusion that he and [the complainant] had a sexual relationship, but was not the basis for that finding." The plaintiff also argued that the board's conclusion was improper because the board did not find the complainant credible. We agree with so much of

the plaintiff's argument that the board did not find the complainant's testimony as to the details of their relationship was accurate, but that is beside the point. The issue before the board was not when and where they had relations, but whether they had them.

The board found that in response to the complainant's testimony, the plaintiff did not offer a plausible explanation as to why he did not get a separate room when he spent the night with her in a Boston hotel or why he gave her gifts. The members of the hearing panel, like members of a jury, may rely on their everyday experiences in assessing the credibility of witnesses. Common sense does not take flight at the hearing room door. See *State* v. *Vasquez*, 53 Conn. App. 661, 665, 733 A.2d 856 ("[i]n considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct"), cert. denied, 250 Conn. 922, 738 A.2d 662 (1999).

We also note that even if the record did not provide substantial evidence of a dual relationship of a sexual nature, which we conclude that it does, the board also concluded that the plaintiff violated § 20-192 because he had social and friendship relationships with the complainant as well. In fact, the plaintiff admitted that he had a social relationship with the complainant.[10] Where

[10] The plaintiff testified in part as follows:

"Q: How would you characterize the relationship you had with [the complainant]?

"A: Well, that I knew her socially. And I've known her for about two years, would be more accurate.

"Q: So you had a social relationship with [the complainant]?

"A: Um (yes).

"Q: Did you have a social relationship with [the complainant]?

"A: Well, there was a social aspect to our relationship."

there is substantial evidence in the record to support any basis or stated reason for the board's decision, the court must sustain that decision. *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 224, 779 A.2d 750 (2001); *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 199, 635 A.2d 1220 (1994). The board's decision can be supported on the basis of the plaintiff's social relationship with the complainant alone. The court therefore properly declined to sustain the plaintiff's appeal.

## II

The plaintiff's second claim is that the court improperly dismissed his appeal because there was no substantial evidence that he violated the standard of care by engaging in sexual and social relationships with the complainant. We do not agree.

On the basis of its review of the record, the court found substantial evidence in Greenfield's testimony as an expert witness as to the standard of care to which psychologists were to adhere in 1985 and 1986. It also concluded that the majority of the hearing panel consisted of professional members of the board, who are entitled to rely on their own expertise. General Statutes § 4-178 (e);[11] see also *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 525, 560 A.2d 403 (1989) ("[a]s long as the board hearing and deciding a licensing matter is composed of at least a majority of experts in the field involved in the case, the board may rely on its own expertise in evaluating charges against persons licensed by the board and the requisite standard of care by which to judge such cases").

Greenfield opined, and the panel agreed, that psychologists are forbidden to have dual relationships with

[11] General Statutes § 4-178 provides in relevant part: "In contested cases . . . (8) the agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence."

patients or with the parents of minor patients. The parents of minor patients are consumers. The psychologist-patient relationship is complicated by other relationships that are not specific to therapy. Dual relationships, including social and sexual relationships, are forbidden because of their potential to impair the psychologist's professional judgment and to increase the risk of exploitation of clients, patients or consumers.

Greenfield also opined that dual relationships with the parents of minor patients continue to be forbidden when the patient reaches the age of majority. He further opined that the plaintiff violated the standard of care by engaging in dual relationships with the complainant after treating her older son. The board found, on the basis of the expertise of its panel members, that the plaintiff had violated the standard of care despite the fact that his dual relationships with the complainant occurred after the older child had reached the age of majority.

By comparison, the plaintiff presented testimony from two experts who opined that the plaintiff had not violated the standard of care. One, Ebert, however, opined that the conduct to which the plaintiff had admitted demonstrated a serious failure of judgment. Ebert acknowledged that the plaintiff had denied having had a sexual relationship with the complainant, but conceded that if such a dual relationship had occurred, it would have been even more reflective of poor judgment on the part of the plaintiff. The board chose to believe Greenfield. It concluded that the plaintiff's conduct compromised the older son's ability to return to the plaintiff for treatment.[12]

---

[12] Ebert testified in part as follows: "I think in response to the earlier question about what would the impact be on the child here, certainly, it is my opinion that if there had been a sexual relationship, that would have had much greater impact on the child in terms of being able to come back into treatment than if there had not been such a relationship.

"Also, the degree of poor judgment would increase, if that's the right direction. But there would be more poor judgment, for what that's worth."

On appeal to this court, the plaintiff contends that he did not violate the standard of care by engaging in dual relationships with the complainant after her older son had reached the age of eighteen because she no longer was a consumer. He takes exception to the panel's finding that Greenfield's testimony was credible rather than the testimony of either of his experts. The long recognized rule, however, is that the trier of fact is the arbiter of credibility, and appellate courts do not pass on such determinations. See *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000). A further weakness in the plaintiff's argument is Ebert's testimony concerning the plaintiff's failure of judgment.

The plaintiff also argues that because the older son had reached the age of majority, the young man could make his own decision as to whether to reenter therapy with the plaintiff. This argument has two flaws. First, it overlooks the board's finding that the dual relationships compromised the older son's ability to return to the plaintiff for treatment. Second, the plaintiff again ignores the board's other finding that supports its decision, which is that at about the time the plaintiff and the complainant were ending their social and sexual relationships, the plaintiff provided psychological services to the complainant's younger son, who was a minor. See *Heithaus* v. *Planning & Zoning Commission*, supra, 258 Conn. 224. Consequently, we conclude that the court properly dismissed the plaintiff's appeal because there is substantial evidence in the record to support the board's conclusion that the plaintiff violated the standard of care for psychologists by engaging in dual relationships with the mother of his minor patients.

III

The plaintiff's third claim is that the court improperly dismissed his appeal because the record lacked substantial evidence to support the board's conclusion that

the plaintiff's offering psychotherapy services was a danger to the public. The plaintiff also claims that the board failed to provide him with notice of this finding and a meaningful opportunity to rebut it. We disagree.

In reviewing the plaintiff's claim, the court first noted with respect to the claim that the board was not required to make a finding that the plaintiff posed a danger to the public.[13] Section 20-192 provides that the board may take any action set forth in General Statutes § 19a-17[14] if it finds that a license holder has "acted negligently, incompetently or wrongfully in the conduct of his profession . . . ." The court concluded that the board's finding that the plaintiff was a danger to the public was related to its placing the plaintiff on probation and was not a basis for its conclusion that the plaintiff had violated the standards of professional conduct or that he had acted negligently, incompetently or wrongfully. We agree.[15]

The court also concluded that the record contained overwhelming evidence that the plaintiff had engaged in a sexual relationship with the complainant. The plaintiff continues to deny that he had a sexual relationship with

[13] The court properly distinguished General Statutes § 20-192 from General Statutes § 20-13c, which governs the actions of the Connecticut medical examining board. Section 20-13c provides in relevant part: "In each case, the board shall consider whether the physician poses a threat, in the practice of medicine, to the health and safety of any person. If the board finds that the physician poses such a threat, the board shall include such finding in its final decision and act to suspend or revoke the license of said physician."

[14] General Statutes § 19a-17 (c) provides in relevant part: "Such board or commission or the department where appropriate may summarily suspend a practitioner's license or permit in advance of a final adjudication or during the appeals process if such board or commission or the department finds that a practitioner . . . represents a clear and immediate danger to the public health and safety if he is allowed to continue to practice."

[15] We also agree with the board's argument that the finding was merely superfluous as to General Statutes § 20-192, as that statute does not require the board to make a finding as to whether the plaintiff is a danger to the public.

the complainant. One of the plaintiff's expert witnesses testified that acknowledging behavior is a critical step in reshaping future behavior. More significantly, however, the plaintiff continues to maintain that a psychologist is forbidden from having a sexual relationship with only a patient or former patient. The plaintiff does not acknowledge that a psychologist is forbidden from having dual relationships with a consumer. The court therefore found substantial evidence in the record to support the board's conclusion that the plaintiff presented a danger to the public.

Furthermore, the court found that in both the 1996 and 1998 decisions, the board concluded that the plaintiff's continuing to practice psychotherapy presented a danger to the public. The plaintiff petitioned the board to open the hearing on the basis of the 1996 decision. The board opened the hearing on its own motion and on the basis of the plaintiff's petition, and reconfigured the hearing panel to consist of a majority of professional members to ensure that its decision was based on expert testimony, and it notified the plaintiff that the board would be relying on its own expertise. The plaintiff does not challenge the board's right to rely on the expertise of its professional members on the hearing panel.

The board provided the plaintiff with an opportunity to present additional evidence at a continued hearing. The plaintiff presented two experts who testified that the plaintiff did not present a danger to the public. The hearing panel was free to disbelieve that testimony. See *Dore* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 604, 610, 771 A.2d 962 (2001). One of the plaintiff's experts, however, testified that the plaintiff's conduct demonstrated "a pattern of lack of judgment," even if the plaintiff had only a business relationship with the complainant.

In 1998, the board issued a proposed decision and invited the plaintiff to respond to it by taking exceptions or by presenting a brief or oral argument. The record demonstrates that there is no basis for the plaintiff's claim that he did not have notice of the board's finding that he was a danger to the public or that he was not offered a meaningful opportunity to rebut the board's conclusions.

We agree with the court's analysis as well as its conclusion that the hearing panel properly refused to permit the plaintiff to testify as to whether his continuing to practice psychotherapy represented a danger to the public. In response to the board's opening of the record, the plaintiff presented the testimony of two expert witnesses. At the conclusion of the experts' testimony, the plaintiff's counsel called the plaintiff to testify and represented that the plaintiff's further testimony would be consistent with the testimony of one of his experts. The hearing panel refused to let the plaintiff testify on the ground that his testimony would be cumulative. General Statutes § 4-178 (1) permits the board to exclude evidence that is unduly repetitious. For all of the foregoing reasons, the court properly excluded the plaintiff's testimony on the issue of whether his practicing psychotherapy presented a danger to the public.

For the reasons stated, there is no merit to the plaintiff's claim that the court improperly dismissed his appeal with respect to the board's finding that the plaintiff's practicing psychotherapy was a danger to the public.

IV

The plaintiff's fourth claim is that the court improperly sustained the board's decision because only one of the three panel members heard the testimony of witnesses. The plaintiff's claim lacks merit.

Due to the reconfiguration of the panel, the panel consisted of one public and two professional members of the board. One of the professional members had been a member of the original panel and heard all of the testimony. The two new members of the panel attested that they had received a copy of the record and reviewed it in its entirety. The plaintiff's claim is governed by General Statutes § 4-179 and our Supreme Court's decision in *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 651.

Section 4-179 (a) provides in relevant part: "When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter *or read* the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision." (Emphasis added.) The substantial evidence in the record demonstrates that the members of the panel either heard the testimony of witnesses or read the record.

Our Supreme Court has held that "the procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 356–57, 542 A.2d 672 (1988). "The express assumption of § 4-179 is that a board may render a final decision even when no board member has heard the evidence or read the record, provided that the board complies with the designated UAPA procedural safeguards." *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 673. "In regard to administrative proceedings, [our Supreme Court has] held that where hearings are required by statute, a [board] member need not be present in order to participate in decisions [i]f

that member acquaints himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to exercise an informed judgment." (Internal quotation marks omitted.) Id.

Here, we conclude that the board exceeded the procedural due process requirements set forth in § 4-179. At least one of the panel members heard the testimony of all witnesses. The panel members who did not hear all of the testimony attested that they had read the record. The board also served a proposed final decision on the plaintiff and gave him an opportunity to respond to it before a final decision was rendered. The court therefore properly dismissed the plaintiff's appeal.

V

The plaintiff's fifth claim is that the delay between the time of the improper conduct and the administrative proceedings violated his constitutional right to due process and to fundamental fairness, and that the court improperly concluded otherwise. The board argues that we should not review this claim because it was not raised at the hearing. We decline to review this claim for the following reasons.

The plaintiff claims that because the alleged improper conduct occurred in 1985 and 1986, the complainant did not lodge her complaint until 1991, the department did not file charges until 1994 and the decision was not rendered until 1998, he was denied his constitutional right to a fair trial due to delay and that he was prejudiced by his dimmed memory. The parties have not cited to any place in the record where evidence of the reason for any delay and alleged prejudice was presented to the board. The board's decision contains no findings related to delay or prejudice resulting therefrom.

Practice Book § 5-2 provides that "[a]ny party intending to raise any question of law which may be

the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority on the record before such party's closing argument and with sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority will be under no obligation to decide the question." In the past, this court has considered claims that were "perhaps less than clear when raised on the record" as long as they were distinctly addressed in a posttrial brief. *Biller Associates* v. *Rte. 156 Realty Co.*, 52 Conn. App. 18, 24, 725 A.2d 398 (1999), aff'd, 252 Conn. 400, 746 A.2d 785 (2000).

On the basis of our review of the record, we conclude that the plaintiff asserted his timeliness claim in special defenses to the board's charges.[16] The plaintiff has not drawn our attention to evidence in the record that he presented on the issue of timeliness, delay or prejudice. He did not raise his special defenses in his brief or oral argument in response to the board's proposed decision. Furthermore, the board's decision contains no factual findings that are relevant to the plaintiff's claim before this court. The record is therefore inadequate for our review, and it was established long ago that appellate courts do not make factual findings. See *Killion* v. *Davis*, 257 Conn. 98, 102, 776 A.2d 456 (2001).

It is well known that "an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) . . . ." (Internal quotation marks omitted.)

---

[16] The plaintiff alleged in his first special defense: "The instant proceeding violates constitutional principles of due process in that the statutory scheme upon which the instant proceeding is founded does not contain a statute of limitations." In his second special defense, the plaintiff alleged: "The instant complaint is barred by the doctrine of laches."

*Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000). This rule applies to appeals from administrative proceedings as well. See *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992); *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 95, 596 A.2d 374 (1991). Although he argues that his claim is one of constitutional magnitude and fundamental fairness, the plaintiff has not sought review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine embodied in Practice Book § 60-5 and provided the legal analysis required for such review.

The plaintiff, however, asks this court to review his claim under the exceptional circumstances doctrine of *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 714 A.2d 1230 (1998), in which our Supreme Court reviewed a claim raised for the first time on appeal. In *Imperial Casualty & Indemnity Co.*, our Supreme Court observed that courts of appeal "review a case on the theory upon which it was tried and decided by the trial court . . . ." (Citation omitted; internal quotation marks omitted.) Id., 320. In exceptional circumstances, however, an appellate court may review a claim not raised at trial. "[S]uch exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or *where the record supports a claim* that a litigant has been deprived of a fundamental constitutional right and a fair trial." (Emphasis added; internal quotation marks omitted.) Id., 321. As we have noted, the board's decision does not contain factual determinations that would constitute an adequate record, and the plaintiff did not bring the matter to the board's attention when he was invited to do so. He therefore has waived his claim. See *Jutkowitz* v. *Dept. of Health Services*, supra, 220 Conn. 95.

The plaintiff raised the present issue when he appealed to the trial court. The court reviewed the claim pursuant to the exceptional circumstances doctrine. Here, the plaintiff asks us to reverse the court's judgment on the basis of two trial court cases in which practitioners' administrative appeals were sustained due to the length of time between the alleged improper acts and the filing of charges, and because the hearings deprived the practitioners of a constitutional right. The cases on which the plaintiff relies are *Koff* v. *Medical Examining Board*, judicial district of New Britain, Docket No. CV 98 0492722 (February 9, 1999) (24 Conn. L. Rptr. 88), and *Baer* v. *Board of Examiners in Podiatry*, judicial district of Hartford, Docket No. CV 96 0562722 (January 6, 1998) (21 Conn. L. Rptr. 165).[17] Superior Court decisions are not binding on this court. See *Commission on Hospitals & Health Care* v. *Lakoff*, 214 Conn. 321, 333, 572 A.2d 316 (1990).

Furthermore, because the plaintiff has presented his claim to this court as if *Baer* and *Koff* are binding on us, he has not provided a constitutional analysis of the question at hand. To our knowledge, the cases have not been challenged on appeal. By comparison, the board has raised significant legal issues calling into question the reasoning of *Baer* and *Koff*. Neither case is before us now, and we decline to consider the question. The controlling law is *Joyell* v. *Commissioner of Education*, 45 Conn. App. 476, 486, 696 A.2d 1039 (state agency not subject to statute of limitations unless declared by legislature; laches may not be invoked against governmental agency), cert. denied, 243 Conn. 910, 701 A.2d 330 (1997).[18] See also *State* v. *Goldfarb*,

---

[17] This opinion does not address whether the court properly considered the plaintiff's claim pursuant to *Baer* and *Koff*.

[18] The plaintiff, in his reply brief, asserts the most extraordinary proposition that *Baer* and *Koff* have overruled *Joyell*. Trial courts are bound by legal precedent. See *State* v. *Porter*, 241 Conn. 57, 61, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

160 Conn. 320, 323, 278 A.2d 818 (1971), quoting *State* v. *Shelton*, 47 Conn. 400, 404 (1879).

The plaintiff implies that we should overrule *Joyell*. Our rules of practice and our own policy do not permit a panel of this court to overturn decisions of this court. See Practice Book §§ 70-7, 71-5; *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999) ("[C]ourt's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc.").

## VI

The plaintiff's last claim is that the board's sanction is not supported by good cause because the board's conclusions lack factual support. In other words, the plaintiff claims that the board abused its discretion. We do not agree.

As a result of finding that the plaintiff violated § 20-192 because he acted negligently, incompetently or wrongfully in the conduct of his profession, the board placed the plaintiff on probationary status, restricted his practice and imposed a $10,000 civil penalty. The civil penalty was stayed and will be executed only if the plaintiff violates the terms of his probation and may be withdrawn if the board restores the plaintiff's license. After one year of probationary status, and yearly thereafter, if necessary, the plaintiff may ask the board to restore his license if he can demonstrate that the circumstances that led to his probation have been remedied.

"If the penalty meted out is within the limits prescribed by law, the matter lies within the exercise of the [board's] discretion and cannot be successfully challenged unless the discretion has been abused. . . . Sentencing is an inherently fact bound inquiry. In an

administrative appeal, a reviewing court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence." (Citation omitted; internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 677–78.

Section 20-192 permits the board to take any action set forth in § 19a-17 if a license holder acts negligently, incompetently or wrongfully in the conduct of his profession. Among other things, § 19a-17 permits the board, after a finding of good cause, to place a practitioner on probationary status, to limit his practice and to assess a civil penalty of up to $10,000.[19] The sanctions the board imposed on the plaintiff fall within the action permitted by § 19a-17. As we have concluded previously, there is substantial evidence in the record to support the board's decision. The court therefore properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[19] General Statutes § 19a-17 provides in relevant part: "(a) Each board . . . may take any of the following actions, singly or in combination, based on conduct which occurred . . . subsequent to the issuance of a . . . license upon finding the existence of good cause . . . (5) Place a practitioner . . . on probationary status and require the practitioner . . . to . . . (B) Limit practice to those areas prescribed by such board . . . (6) Assess a civil penalty of up to ten thousand dollars . . . .

"(b) Such board . . . may withdraw the probation if it finds that the circumstances which required action have been remedied."